UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| RONNIE MONEY COLEMAN,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS HOMAN, *et al.*,<br><br>Defendants. | Case No. 3:19-CV-0754-ART-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF Nos. 35, 39] |
|---|---|

This case involves a civil rights action filed by Plaintiff Ronnie Money Coleman ("Coleman") against Defendants Dennis Homan ("Homan"), Melina Castro ("Castro"), and Donald Southworth ("Southworth") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 35.) Coleman opposed the motion, (ECF No. 42), and Defendants replied. (ECF No. 44.) Also pending before the Court is Coleman's cross-motion for summary judgment. (ECF No. 39.) Defendants opposed the motion, (ECF No. 43), and no reply was filed. For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 35), and Coleman's cross-motion for summary judgment, (ECF No. 39), be denied.

**I.   BACKGROUND**

Coleman is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). On December 19, 2019, Coleman initiated this lawsuit by filing an application to proceed *in forma pauperis* and a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 for events that occurred while Coleman was incarcerated at the Ely State Prison ("ESP"). (ECF Nos. 1, 4.)

///

---

[1]   This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

Coleman's complaint alleges the following: Coleman is an inmate in the custody of the NDOC who declined to work night shifts in the kitchen at ESP. (ECF No. 25 at 3.) Correctional officers did not take kindly to his refusal, deemed it insubordination, and scheduled a re-classification hearing to deny Coleman his canteen privileges. (*Id.* at 4.) Coleman did not receive notice of his charge "within the 10-day frame" specified by prison regulations. Instead of being placed back in general population pending his hearing, as required for his alleged infraction, Coleman was administratively segregated—limiting his access to showers, telephones, and microwaves, as well as requiring 23 hours of lockdown per day. (*Id.* at 3-4.) Though he was guaranteed a hearing within 30 days of the infraction, Coleman's case was not heard for months. (*Id.*) Coleman alleges that his hearing, with Officer Homan presiding, was infected with procedural and substantive bias, resulting in a conviction. (*Id.*)

On October 7, 2020, the District Court entered a screening order on Coleman's complaint, (ECF No. 3), allowing Coleman to proceed on a single Fourteenth Amendment due process claim against Defendants based on the alleged placement in administrative segregation after being found guilty of a disciplinary charge. (*Id.* at 4-6.) The District Court dismissed, without prejudice, an Eighth Amendment conditions of confinement claim and dismissed, with prejudice, a Fourteenth Amendment due process claim. (*Id.* at 7-8.) On February 25, 2021, Coleman filed a motion for leave to amend his complaint, (ECF No. 22), along with a proposed amended complaint, (ECF No. 22-1). The proposed amendment sought to add an additional defendant, Southworth, to the sole Fourteenth Amendment due process claim. (*See id.*) The Court granted the motion, (ECF No. 24), making the amended complaint, (ECF No. 25), the operative complaint in this case.

On February 9, 2022, Defendants filed their motion for summary judgment arguing they are entitled to summary judgment because (1) Coleman was not placed in Administrative Segregation; (2) Defendant Homan was not involved in this allegation; (3) Coleman failed to exhaust his administrative remedies; and (4) Defendants are entitled to qualified immunity. (ECF No. 35.) On March 7, 2022, Coleman filed his motion for

summary judgment arguing he was placed in administrative segregation and was not afforded due process as required. (ECF No. 39.)

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d

at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

### III. DISCUSSION

#### A. Fourteenth Amendment Procedural Due Process

Fourteenth Amendment claims for denial of procedural due process entail two components. First, the court must determine that the plaintiff possessed a constitutionally protected interest, such that due process protections apply. Second, and if so, the court must examine the level of due process demanded under the circumstances. A claim lies only where the plaintiff has a protected interest, and the defendant's procedure was constitutionally inadequate.

The Fourteenth Amendment of the United States Constitution guarantees all citizens, including inmates, due process of law. However, the Constitution protects only certain interests with the guarantees of due process; an inmate's right to procedural due process arises only when a constitutionally protected liberty or property interest is at

5

stake. *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). Such interests may arise from the Constitution itself or from state law.

Under the Due Process Clause, an inmate does not have liberty interests related to prison officials' actions that fall within "the normal limits or range of custody which the conviction has authorized the State to impose." *Sandin v. Conner,* 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano,* 427 U.S. 215, 225 (1976)). The Clause contains no embedded right of an inmate to remain in a prison's general population. *Id.* at 485–86. Further, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms,* 459 U.S. 460, 468 (1983), *overruled on other grounds by Sandin,* 515 U.S. at 472–73. "Thus, the hardship associated with administrative segregation, such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, does not violate the due process clause because there is no liberty interest in remaining in the general population." *Cnty. of Kern,* 45 F.3d at 1315. At bottom, "[o]nly the most extreme change in conditions of confinement have been found to directly invoke the protections of the Due Process Clause...." *Chappell v. Mandeville,* 706 F.3d 1052, 1063 (9th Cir. 2013).

State law also may create liberty interests. Where segregated housing or other prison sanctions "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]" due process protections arise. *Sandin,* 515 U.S. at 483–84. What matters is not the particular label or characterization of the segregation or sanction, but instead, its underlying nature: "[n]o matter how a prisoner's segregation (or other deprivation) is labeled by the prison or characterized by the prisoner, a court must examine the substance of the alleged deprivation and determine whether it constitutes an atypical and significant hardship...." *Hernandez v. Cox,* 989 F.Supp.2d 1062, 1068–69 (D. Nev. 2013).

When conducting the atypical-hardship inquiry, courts examine a "combination of conditions or factors...." *Keenan v. Hall,* 83 F.3d 1083, 1089 (9th Cir. 1996). These

include: (1) the extent of difference between segregation and general population; (2) the duration of confinement; and (3) whether the sanction extends the length of the prisoner's sentence. *See Serrano,* 345 F.3d at 1078 (citing and discussing *Sandin,* 515 U.S. at 486–87). That a particular punishment or housing placement is more restrictive than administrative segregation or general population privileges is, alone, not enough: even where "the conditions in segregation are worse than those a prisoner will typically encounter in prison, the Court must still consider whether the conditions are extreme enough in nature and duration or whether they will necessarily affect the length of a prisoner's sentence." *Hernandez,* 989 F.Supp.2d at 1069. In addition, the Supreme Court has held that the loss of prospective work and good-time credits that ultimately may affect an earlier release from incarceration is "too attenuated" to support an atypical hardship finding under the third factor. *See Sandin,* 515 U.S. at 487. "Typically," as the Ninth Circuit has stated, "administrative segregation in and of itself does not implicate a protected liberty interest" under the *Sandin* factors. *Serrano,* 345 F.3d at 1078.

**1.   Analysis**

During the incident at issue in this case, Coleman was housed in Unit 5, a close custody unit, at ESP. (ECF No. 35-3 at 3; ECF No. 35-9 at 3.) All inmates housed in Unit 5 were expected to work in the culinary. (ECF No. 35-1 at 2.) Coleman was assigned, at his own request, to a paid position in the culinary at ESP. (*Id.*)

An investigation detail report ("IDR") dated April 22, 2019, states that on April 21, 2019, Coleman told staff that he was not going to work in the culinary that night. (ECF No. 35-1.) The IDR further states this was the third night in a row Coleman refused to work his scheduled shift on the Culinary Graveyard crew. (*Id.*) A full classification review hearing was held on April 22, 2019 to discuss Coleman's failure to go to work and a pending Notice of Charges ("NOC"). (ECF No. 35-2.) The case note from the hearing states Coleman did not want to work at night and "figured since he is a close custody inmate he was not allowed to be out anyway." (*Id.*) Coleman was also informed at the hearing that since his offense was work related, he would be level reduced while his NOC

was pending. (*Id.*) The next day, Coleman was moved to Unit 3, which Defendants assert is a "Behavior Modification Unit" ("BMU"), pending a disciplinary hearing. (ECF No. 35-9 at 2; ECF No. 35-3 at 3.) Unit 3 is also a close custody unit. (ECF No. 35-14 at 2.) Defendants assert that Unit 3 is not considered Administrative Segregation at ESP. (ECF No. 35-9 at 3; ECF No. 35-11 at 3; ECF No. 35-14 at 2.) Defendants assert that Administrative Segregation at ESP is much more restrictive than Unit 3. (*Id.*) Defendants also assert that when moving from one close custody unit to another close custody unit, no hearing is required. (*Id.*) Defendants claim Coleman did not receive segregation reviews because he was not in segregation. (ECF No. 35-9 at 3; ECF No. 39 at 28.)

On June 24, 2019, Coleman was seen by Defendant Homan for a disciplinary hearing related to his NOC. (ECF No. 35-5.) Coleman was found guilty of refusing to work and was given a discipline of 15 days loss of canteen. (*Id.*) On July 10, 2019, Coleman was moved out of Unit 3 to Unit 6. (ECF No. 35-3 at 3.)

By contrast, in support of his cross-motion for summary judgment, Coleman submitted his signed and sworn affidavits regarding allegations of due process violations. (*See* ECF No. 39 at 10-12.) Coleman asserts that after his refusal to work, Defendant Castro informed him he would be demoted from Phase I to Phase II General Population, but instead, Coleman was transferred to Administrative Segregation Unit 3. (*Id.* at 10.) Because he was placed into Administrative Segregation, Coleman asserts he should have been afforded certain due process rights. (*Id.* at 11.) However, Coleman asserts he was not seen for a due process hearing until nearly 60 days after the initial transfer to Unit 3. (*Id.* at 4-5, 11.) Coleman further asserts that he faced an atypical and significant hardship while confined in administrative segregation as he was confined to his cell for 23-24 hours a day, had no dayroom time, had no guaranteed outdoor recreation, had showers only every 3 days, was subjected to a full cavity strip search and full restraints to leave his cell, and afforded only one phone call per week. (*Id.* at 6-7.) Conversely, inmates in General Population Phase I and Phase II are allowed daily outdoor recreation and dayroom time (where inmates have full access to phones and showers without

restraints). (*Id.*)

In response to Coleman's cross-motion for summary judgment, Defendants state that "at a minimum" there is a genuine issue of material fact as to whether Coleman's transfer to Unit 3 constituted an atypical hardship over his previous confinement. (ECF No. 43 at 5, 8.) Further, Defendants also state that "at a minimum" there is a genuine issue of material fact as to whether the fact Coleman was given a hearing prior to the transfer and a disciplinary hearing two months later was sufficient process. (*Id.*)

Based on the evidence before the Court, and in viewing all facts and drawing all inferences in the light most favorable to Coleman, the Court finds that there are genuine issues of material fact that preclude summary judgment. A reasonable jury could determine that Coleman's placement in Unit 3 was an atypical and significant hardship and that he did not receive the process he was due. Genuine issues of material fact exist as to whether Coleman was or was not placed in Administrative Segregation such that he was entitled to certain due process rights. In addition, genuine issues of material fact exist as to whether those due process rights were violated. As such, the Court recommends that Defendants' motion for summary judgment and Coleman's cross-motion for summary judgment be denied.[2]

### B. Qualified Immunity

Defendants assert that even if a constitutional violation exists, they are entitled to qualified immunity because there is no evidence that the Defendants knowingly violated a clearly established right of Coleman.

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown*, 751 F.3d at 988–89 (citing *Pennhurst*, 465 U.S. at 100). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face

---

[2] The Court has reviewed Defendants' personal participation and exhaustion arguments and does not find them persuasive. The Court further declines to address those arguments in this order based on the Court's finding that genuine issues of material fact exist as to whether Coleman's constitutional rights were violated.

1  other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the Court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The Court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42. A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

"[J]udges of the district courts… should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "[W]hether a constitutional right was violated… is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the Court decides as a matter of law the "clearly established" prong of the qualified immunity analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018). Because the Court finds that genuine issues of material fact exist as to whether Coleman's constitutional rights were violated, the Court declines to address the "clearly established" prong at this time.

IV.    CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 35), and

10

Coleman's motion for summary judgment, (ECF No. 39), be denied.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 35), be **DENIED**; and,

**IT IS FURTHER RECOMMENDED** that Coleman's motion for summary judgment, (ECF No. 39), be **DENIED**.

**DATED**: June 24, 2022.

_____
**UNITED STATES MAGISTRATE JUDGE**